OLIVER G. TRAPHAGEN and Another v. CHARLES H SAGAR and Others.[1]

December 24, 1895.

Nos. 9648—(235).

**Corporation—Fraud on Subscribers—Promissory Note.**

Plaintiffs, defendants, and certain third parties had severally subscribed for shares of the stock of a corporation. The defendants had taken and paid for the stock for which they had subscribed, but the plaintiffs and some of the third parties had refused to take or pay for theirs, but finally each of

[1] Reported in 65 N. W. 633.

these "repudiating" subscribers, except the plaintiffs, agreed to do so if all the others would. The plaintiffs still refused, whereupon defendants, in order to induce the other subscribers to take their stock, agreed with plaintiffs that if they would take and pay for the stock for which they had subscribed they (defendants) would thereafter buy it from them, and take it off their hands. In pursuance of this agreement plaintiffs took and paid for their stock, and defendants executed their note to them for the purchase price. The other "repudiating" subscribers thereupon took and paid for their stock, being kept in ignorance of the agreement between plaintiffs and defendants. *Held,* that the agreement between plaintiffs and defendants was not a fraud on the other subscribers (assuming that their subscriptions for stock were binding contracts), and that the note executed by defendants to plaintiffs was valid.

Appeal by defendants from a judgment of the district court for St. Louis county, in favor of plaintiffs for $5,351.11, entered in pursuance of the order of C. L. Lewis, J. Affirmed.

*Draper, Davis & Hollister,* for appellants.

*Cash, Williams & Chester,* for respondents.

MITCHELL, J.    Action on a promissory note.    The substance of the defense interposed was as follows:    The plaintiffs, the defendants, and a number of other persons had each subscribed for and agreed to take and pay for a certain number of shares of the stock of a corporation.    Defendants had taken and paid for their stock, but the plaintiffs and a number of the other subscribers refused to take and pay for theirs, contending "that they were not liable upon their promises and undertaking contained in the subscription agreement." Thereupon defendants endeavored to induce these "repudiating" subscribers to take and pay for their stock, and all of them, except the plaintiffs, promised to do so if all the others would.    Plaintiffs declined to make any such promise, and still declined to take and pay for the stock for which they had subscribed, whereupon defendants entered into an agreement with them that, if they would take and pay for the stock, and thereby induce the other "repudiating" subscribers to do likewise, the plaintiffs need not remain stockholders, but that they (defendants) would take the stock off their hands, and pay them for it.    In pursuance and in performance of this agreement defendants executed to plaintiffs the note in suit, which was to be in payment of the stock which plaintiffs were to take and pay for, and

which defendants agreed to take off their hands. Thereupon plaintiffs took and paid for the stock for which they had subscribed, and the other repudiating subscribers did likewise.

It is alleged that the purpose of this arrangement between plaintiffs and defendants was to induce the other repudiating subscribers to take and pay for their stock, and that the plaintiffs and defendants purposely kept them in ignorance of this arrangement. The defendants allege that they have never received the stock, but they do not allege that plaintiffs have refused to deliver it to them, or that they are unwilling or unable to do so. The fair inference is that they have not received it because they have repudiated their agreement, and have refused to accept the stock. The contention of the defendants is that the note is void for the reason that the transaction between plaintiffs and defendants was a fraud on third parties, to wit, the other "repudiating" subscribers, whereby they were induced to take and pay for the stock for which they had subscribed in ignorance of this secret arrangement between plaintiffs and defendants, whereby the latter had agreed to take the stock of the former off their hands.

We fail to see how the transaction amounted to a fraud, in a legal sense, upon the other subscribers. If the object had been to induce them to subscribe for stock, or to assume some liability which they had not already incurred, a different question would have been presented. But there is no allegation that their stock subscriptions were not binding, or that they were not legally liable thereon. The allegation is merely that they "contended" that they were not. Therefore we must assume that these subscriptions were binding and enforceable, and that in taking the stock and paying for it they were simply discharging an existing obligation, and hence did nothing which they were not bound to do even if plaintiffs had persisted in refusing to perform their subscription contract. The agreement between plaintiffs and defendants, reduced to its lowest denomination, was that, if plaintiffs would perform their stock subscription contract, the defendants would buy the stock from them, and take it off their hands. It may be that, if defendants had not agreed to do this, the plaintiffs would have persisted in refusing to perform their contract, and, if they had, that the other "repudiating" subscribers would have continued to do likewise. But how all this did or could

result in any fraud, in a legal sense, upon the other subscribers, it is impossible to see.    It did not and could not result in inducing them to do anything which they were not already obliged to do.    The answer stated no defense, and the court was right in ordering judgment for the plaintiffs on the pleadings.

Judgment affirmed.